JOURNAL ENTRY AND OPINION
Amelia Wurz appeals from a judgment of the juvenile court terminating her parental rights and granting permanent custody of her children, Daniel and Briana Wurz, to the Cuyahoga County Department of Children and Family Services. On appeal, she urges CCDCFS failed to present clear and convincing evidence that the children should be permanently placed with CCDCFS. After reviewing the record before us, we conclude the trial court did not abuse its discretion and we affirm the judgment of the court.
The record before us reveals Daniel, d.o.b. 10/20/94, and Briana, d.o.b. 12/17/97, first came to the attention of CCDCFS on June 12, 1998, due to allegations that Briana had been physically abused. On the night of June 11, 1998, Wurz took a friend to the hospital and left the children in the care of her father and her boyfriend, Shaun Madej. Upon her return the next morning, both children were dressed and ready to go to daycare. Later that afternoon, Wurz changed Briana's clothes and noticed new bruises on her back and buttocks. She testified that she intended to take Briana to the hospital for examination, but before she left, a CCDCFS caseworker and two police officers arrived and escorted Wurz and the children to Fairview General Hospital. Upon investigation, CCDCFS learned that on three separate occasions, six-month-old Briana had been observed with bruising on her body. On the date of removal, she had bruises on her chest, arms, back, buttocks and legs that had been so severe she required hospitalization. As a result, CCDCFS removed both children, placed them in a foster home, and filed a complaint alleging Briana to be abused and Daniel to be dependent. In November 1998, Wurz admitted the allegations in the complaint and both children were committed to the temporary custody of CCDCFS. Wurz also pled no contest, and was convicted of child endangering in Rocky River Municipal Court based upon the injuries Briana sustained.
The record further reflects that in June 1998, Susan Peevler, a county caseworker, developed a case plan for reunification which required Wurz to attend parenting classes, obtain stable housing, complete a drug and alcohol assessment, attend individual counseling, and complete a psychological assessment. Peevler initially referred her to Westside Community Mental Health's sixteen-week parenting education program, which Wurz began in November 1998. She was terminated from that program prior to completion, however, due to her failure to attend the classes on a consistent basis. Wurz did complete six classes prior to her termination and the program coordinator indicated that she needed to re-start the program. However, at the time of the final hearing in September 1999, approximately fourteen months after the children had been removed from her care, she had not begun the second program.
Regarding her psychological evaluation, the first appointment had been scheduled for September 24, 1998, but Wurz failed to appear. At the second appointment on October 9, 1998, she appeared one hour and fifteen minutes late and the clinician could not see her, but asked her to return. At the third appointment, scheduled for November 13, 1998, Wurz appeared two hours late and could not complete the entire examination. Wurz again failed to appear at a fourth appointment scheduled for December 18, 1998 and had no further contact with the clinic until shortly before the hearing on January 20, 1999. An appointment was scheduled for January 15, 1999, but Wurz failed to appear on time.
Dr. Douglas Waltman did complete an evaluation of Wurz and testified that she has difficulty accepting responsibility for her actions and is untrustworthy, unreliable and irresponsible. He also testified that he had concerns regarding Wurz's failure to express anger toward Madej, her ex-boyfriend, who she claimed had inflicted Briana's bruises. In conclusion, Waltman opined that Wurz is at significant risk of abusing and/or neglecting her children should they be returned to her care.
In June 1999, CCDCFS moved for permanent custody because Wurz had not participated in counseling and failed to provide documentation reflecting that she had obtained stable housing. Regarding her employment, the record reflects that at the time of the August 1999 hearing, Wurz was unemployed. She had been employed at McDonald's, but quit at the end of July. In September 1999, Wurz had recently obtained another job. Additionally, CCDCFS determined that Wurz had failed to comply with other terms of the case plan, particularly the parenting classes and the psychological examination.
The court conducted a hearing on August 18, 1999 and September 16, 1999. In addition to the evidence, the court received a recommendation from the guardian ad litem that permanent custody be granted. On February 18, 2000, the court granted permanent custody to CCDCFS. Wurz now appeals and sets forth two assignments of error for our review.
 I. THERE WAS NO CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT OR SHOULD NOT BE PLACED WITH THEIR MOTHER WITHIN A REASONABLE TIME.
 II. THERE WAS NO CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO BE PLACED IN THE PERMANENT CUSTODY OF CCDCFS.
Wurz argues the state failed to present clear and convincing evidence that either Briana and Daniel could not be placed with her in a reasonable time or that CCDCFS should have been granted permanent custody. The state, however, posits the court's decision had been made in the best interest of the children.
Thus, we are concerned with whether the trial court abused its discretion when it granted permanent custody of Briana and Daniel Wurz to CCDCFS.
An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof. See In re Adoption of Holcomb (1985), 18 Ohio St.3d 361; In re Ball (1982), 5 Ohio App.3d 56.
Further, the award of permanent custody of a child is governed by R.C. 2151.414(B) which provides in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that * * *:
 (1) * * * the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents; * * *.
The court, when determining the best interests of the children during a permanent custody hearing, must consider the factors enumerated in R.C.2151.414(D), which include the reasonable probability of adoption, interaction with parents, siblings and foster parents, wishes of the children, custodial history, and the need for a legal secure permanent placement.
In determining whether the children can be placed with their mother in a reasonable time, the court must consider the eight enumerated factors listed in R.C. 2151.414(E). In this case, the court considered the following:
 (1) Following the placement of the [children] outside the [children's] home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the [children] to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions * * *.
* * *
(3) The parent committed any abuse * * *.
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
(12) Any other factor the court considers relevant.
In this case, the court found by clear and convincing evidence that it is in the best interest of the children to grant permanent custody to CCDCFS and further found that the children cannot be placed with their mother within a reasonable time for the following reasons:
 Mother has not complied with case plan adjectives (sic) and has not remedied the conditions which caused the removal of the children from the home. Alleged fathers for the children are unknown, they have not established paternity, and provide no care or support for the children. The Court further finds that reasonable efforts have been made to prevent the removal of said children from their home or make it possible for them to return by Cuyahoga County Department of Children and Family Services.
The court also heard testimony from the foster father, who stated that he and his wife have cared for Briana and Daniel since July 1998, that Wurz' interaction with the children has been sporadic and that they wish to adopt both children.
After a careful review of the record in this case, we have concluded the judgment of the trial court is supported by clear and convincing evidence sufficient to support the decision to award permanent custody of Briana and Daniel to CCDCFS instead of Wurz. Accordingly, these assignments of error are not well taken.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division to carry this judgment into execution.
 _________________________ JOSEPH J. NAHRA, JUDGE
DIANE KARPINSKI, P.J., and PATRICIA A. BLACKMON, J., CONCUR
(Retired, Eighth Appellate District, Sitting by Assignment)